IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| HERSHEL RODNEY NUZUM, | ) | |
| | ) | 8:05cv335 |
| Plaintiff, | ) | |
| | ) | MEMORANDUM AND ORDER |
| vs. | ) | |
| | ) | |
| SUN CHLORELLA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for summary judgment, i.e., filing no. 39, the Motion for Summary Judgment filed by the defendant, Sun Chlorella, and filing no. 43, the "Brief in Support of Motions for Summary Judgment Including Interrogatories, Testimonials and Discovery" filed by the plaintiff, Hershel Rodney Nuzum.[1] Also before the court is filing no. 44, the plaintiff's Motion to Waive Jury Trial.[2]

The plaintiff filed this action against "Sun Chlorella," later clarified as Sun Chlorella USA, to stop the importation into this country from Japan of the product Chlorella tablets and to recover damages in an unspecified amount. According to the plaintiff, the Chlorella tablets, advertised as nutritional supplements, in fact are harmful to the human body because they attack elements of the digestive system, causing functional disruption, and they prolong the waste elimination process, causing constipation and regurgitation. While supposed to remove toxins and chemicals from the body, the plaintiff contends that the tablets cannot distinguish other elements of the digestive system from the toxins and chemicals and thus remove "good" elements along with the "bad" elements." (See, e.g., filing nos. 1, 14, 42, 43.) The plaintiff also alleges injury to his colic valve.

Accordingly, the plaintiff has filed one products liability claim under Nebraska law alleging strict liability in tort. Subject matter jurisdiction is based on 28 U.S.C. § 1332 (diversity of citizenship).

---

[1] Filing no. 43 is the plaintiff's Motion for Summary Judgment. The defendant has filed a Brief in support of its Summary Judgment Motion (filing no. 40); Index in Support of Summary Judgment (filing no. 41); and Response to Plaintiff's Motion for Summary Judgment (filing no. 42). In filing no. 45, the defendant reasserts its right to a jury trial, in response to the plaintiff's waiver of jury (filing no. 44).

[2] The parties have consented to the jurisdiction of the undersigned Magistrate Judge for all purposes up to and including the entry of judgment.

The court's Order Setting Schedule for Initial Progression of a Civil Case (filing no. 19) set a deadline of June 29, 2006 for the parties to name their expert witnesses. A later progression order (filing no. 35) established a discovery deadline of October 6, 2006. On October 9, 2006, the defendant moved for summary judgment in light of the plaintiff's avowed intention to call no experts at trial and the plaintiff's failure to identify any expert witnesses by the discovery deadline. The plaintiff agrees that he has no expert testimony to offer in this matter. In fact, plaintiff is the only witness he intends to call on his own behalf. (See filing no. 42-4, P. Dep.[3] at 46.)

**Essential Elements**

"In a cause of action based on strict liability in tort, the question involves the quality of the manufactured product, that is, whether the product was unreasonably dangerous .... To recover on a claim of strict liability, a plaintiff must prove by a preponderance of the evidence:

> '(1) The defendant placed the product on the market for use and knew, or in the exercise of reasonable care should have known, that the product would be used without inspection for defects; (2) the product was in a defective condition when it was placed on the market and left the defendant's possession; (3) *the defect is the proximate or a proximately contributing cause of plaintiff's injury sustained while the product was being used in the way and for the general purpose for which it was designed and intended*; (4) the defect, if existent, rendered the product unreasonably dangerous and unsafe for its intended use; and (5) *plaintiff's damages were a direct and proximate result of the alleged defect*.'"

Stahlecker v. Ford Motor Co., 667 N.W.2d 244, 257-58 (Neb. 2003) (emphasis in original; citations omitted). See also Adams v. American Cyanamid Co., 498 N.W.2d 577, 582 (Neb. App. 1992), *citing* Restatement (Second) of Torts § 402A, which provides in pertinent part: "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property." "This court has defined the term 'unreasonably dangerous' to mean that the product has a propensity for causing physical harm beyond that which would be contemplated by the ordinary user or consumer who purchases it, with the ordinary knowledge common to the foreseeable class of users as to its characteristics ...." Id. (Citations omitted.)

Thus, a claim for strict products liability includes proof that: (1) the product was defective, rendering it unreasonably dangerous for its intended use, and (2) the defect was

---

[3]Plaintiff's Deposition is referred to as "filing no. 42-4, P. Dep."

a direct and proximate cause of the alleged injuries.  Delgado v. Inryco, Inc., 433 N.W.2d 179, 185 (Neb. 1988) (defect, proximate cause, injury).

"In products liability litigation, the notion of a defective product embraces two separate concepts. The first, commonly labeled as a 'manufacturing defect,' is one in which the product differs from the specifications and plan of the manufacturer.  The second concept of a defective product is one in which the product meets the specifications of the manufacturer but the product nonetheless poses an unreasonable risk of danger. This condition is generally characterized as a 'design defect.'"  Jay v. Moog Automotive, Inc., 652 N.W.2d 872, 879 (Neb. 2002) (citation omitted).  A product may also be defective and unreasonably dangerous "because the manufacturer sold the product without sufficient warnings or instructions.  The Restatement (Second) of Torts 402 A, comment j. at 353 (1965), states, 'In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning ... as to its use.'"  Haag v. Bongers, 589 N.W.2d 318, 329 (Neb. 1999).  In this case, the plaintiff alleges the equivalent of a "design defect" in the sense that the Chlorella tablets, when manufactured in accordance with specifications and as intended, are unreasonably dangerous for human consumption.

## Expert Testimony - Defect and Causation

As the defendant points out in its brief in support of summary judgment, the plaintiff cannot establish essential elements of his products liability claim without expert testimony.  Thus, the absence of expert evidence in the record regarding those essential elements would prevent the plaintiff from prevailing at trial and warrants summary judgment for the defendant.  Specifically, for a claim based on a theory of strict products liability, expert evidence is necessary to establish the elements of product defect and causation: (1) whether Chlorella tablets constitute a defective product, i.e., unreasonably dangerous, and (2) whether Chlorella tablets proximately caused injury or damage to the plaintiff.

Product Defect

Under Nebraska law, the plaintiff must present expert testimony to show that a product is defective "'when standards of performance of the product are not generally known ...'"  Laird v. Scribner Coop., 466 N.W.2d 798, 804 (Neb. 1991), *quoting* Durrett v. Baxter-Chrysler Plymouth, Inc., 253 N.W.2d 37, 39 (Neb. 1977).  In this case, the plaintiff asserts that Chlorella tablets gave him constipation. However, the propensity of a tablet or supplement or medicinal product to cause constipation in one person does not, in and of itself, indicate a defect in the product. To extrapolate from his own discomfort, the plaintiff requires expert testimony to demonstrate more than the mere anecdotal evidence of his own experience.  See, e.g., Hohnstein v. W.C. Frank, 468 N.W.2d 597, 602 (Neb. 1991):

3

> When the subject matter is wholly scientific or so far removed from the usual and ordinary experience of the average man that expert knowledge is essential to the formation of an intelligent opinion, only an expert can competently give opinion evidence as to the cause of the physical condition .... The pathological cause of an ailment is a scientific question upon which it is necessary to obtain scientific knowledge, and only the opinions of experts are of value .... It has also been asserted:
>
> [W]here the claimed injuries are of such a character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science. Such a question must necessarily be determined from testimony of skilled professional persons and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries.

(Citation omitted.)

Causation

Similarly, expert testimony is required to establish that, in fact, the Chlorella tablets constituted the cause of the plaintiff's elimination problems. See, e.g., Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757 (8th Cir. 2006) (absence of admissible expert testimony on medical causation led to summary judgment on the plaintiff's strict liability claim and on the issue of permanent medical injury). See also Schafersman v. Agland Coop., 681 N.W.2d 47, 56 (Neb. 2004) (dairy farmers could not prevail on the issue of causation because they produced no admissible expert evidence to rebut feed seller's prima facie showing that no scientific basis supported a causative link between the seller's contaminated feed and the buyer's ill cows).

"Ordinarily, in medical cases, product defect and medical causation must be established by expert testimony." Uribe v. Sofamor, S.N.C., 1999 WL 1129703 at *7 (D. Neb. Aug. 16, 1999), appeal dismissed (8th Cir. Sept. 27, 2001). A lack of expert testimony on the question of causation results in an insufficiency of proof where the issue involves technical, scientific or medical matters which are beyond the common knowledge or experience of jurors. See, e.g., Mendoza v. Omaha Meat Processors, 408 N.W.2d 280, 289 (Neb. 1987): "Unless the character of an injury is objective, that is, an injury's nature and effect are plainly apparent, an injury is a subjective condition, requiring an opinion by an expert to establish the causal relationship between an incident and the injury as well as any claimed disability consequent to such injury."

The record indicates many problems with the plaintiff's theory of his case. For example, the plaintiff consumed 15-20 Chlorella tablets daily for approximately two and

one-half years (filing no. 42-4, P. Dep. at 18-19, 23), during which time he had other medical conditions for which he took other medications. By his own testimony, the plaintiff suffered constipation "only intermittently" for most of the period he consumed the Chlorella tablets (filing no. 42-4, P. Dep. at 23-25). Around September of 2004, however, the plaintiff experienced chronic constipation, so he began to administer daily enemas to himself and consumed a laxative (Ex-Lax) almost daily, both of which he purchased at a drug store (filing no. 42-4, P. Dep. at 34-35). After a period of self-medication in this fashion, the plaintiff decided to see a doctor to obtain a colonoscopy.[4] Thus, although the plaintiff believes Chlorella tablets were the "root cause" of his constipation (filing no. 42-4, P. Dep. at 27), there may have been other factors entering into the plaintiff's digestive problems such as his other medications, his diet and lifestyle and even his self-medication. The plaintiff has no medical or expert testimony to support his diagnosis that Chlorella tablets caused his problems. He also has no expert testimony that Chlorella tablets constitute a defective product.

The plaintiff relies on a textbook entitled Human Anatomy and Physiology of Man (filing no. 42-4, P. Dep. at 27, and filing nos. 42-5 & 42-6), from which he derived information causing him to believe that his colic valve has been injured. He maintains that belief because "going to the bathroom, it's just not the same. My stools aren't the same." (Filing no. 42-4, P. Dep. at 45.) However, the plaintiff has not ever been informed by a physician that his colic valve was injured as a result of taking Chlorella tablets (id.). He has never discussed Chlorella tablets with any medical doctor or nutritionist, and he has never seen any findings or studies discussing Chlorella tablets (filing no. 42-4, P. Dep. at 37).

In short, the record contains an almost total failure of proof in support of the plaintiff's products liability claim. At a minimum, the plaintiff has failed to produce evidence of product defect or causation adequate to create a genuine issue for trial.

## Summary Judgment

Summary judgment is "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327(1986). The court must examine the record in the light most favorable to the nonmoving party. See, e.g., Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the

---

[4]In October of 2004, the plaintiff stopped taking Chlorella tablets.

5

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. at 323.  In response, the opponent must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original).  A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts."  Id. at 586.

"[T]he mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment as a matter of law .... Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citations omitted).  Accord Dico, Inc. v. Amoco Oil Co., 340 F.3d 525, 529 (8th Cir. 2003).  "If the evidence is merely colorable ... or is not sufficiently probative ... summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

The court may not weigh the evidence, determine credibility, or decide the truth of any factual matter in dispute.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; Tatum v. City of Berkeley, 408 F.3d 543, 549 (8th Cir. 2005).  However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.[5]

Because the plaintiff has failed to present sufficient evidence of a factual dispute with any potential to affect the outcome of this case in his favor, id. at 247-49, the defendant's Motion for Summary Judgment will be granted, and the plaintiff's Motion for Summary Judgment will be denied.  A separate judgment will be entered accordingly.

---

[5]In the context of cross-motions for summary judgment, the approach is only slightly modified, as explained in International Brotherhood of Electrical Workers, Local 176 v. Balmoral Racing Club, Inc., 293 F.3d 402, 404 (7th Cir. 2002):

> The usual Rule 56 standard of review applies to cross-motions for summary judgment, and our review is de novo .... To the extent that [the losing party] challenges the court's decision to grant summary judgment in favor of the [prevailing party], we construe the record in the light most favorable to [the losing party] .... To the extent that [the losing party] asserts that the court erred in refusing to grant its own motion for summary judgment, the record is evaluated in the light most favorable to [the prevailing party] .... Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law under the familiar standards of Fed. R. Civ. P. 56(c).

THEREFORE, IT IS ORDERED:

1. That filing no. 39, the defendant's Motion for Summary Judgment, is granted;

2. That filing no. 43, the plaintiff's Motion for Summary Judgment, is denied;

3. That filing no. 44, the plaintiff's Motion to Waive Jury Trial, is denied as moot; and

4. That judgment will be entered in accordance with this Memorandum and Order.

DATED this 27th day of December, 2006.

BY THE COURT:


s/ F. A. GOSSETT
United States Magistrate Judge